v. YAHOO and GOOGLE and MICROSOFT, 2011-12-81. Mr. Sefton. Good morning. May I plead with the Court? Kony does not anticipate Claims 12-18-22 of the 450 patent because, as stated in his abstract, it encloses a method of bid management that focuses on monitoring an advertiser's position in a paid search auction, In other words, what you're arguing is essentially an issue already decided by this Court. Well, that was certainly urged and decided below, Your Honor, but we think that was an error. And the reason that that was an error, Your Honor, is because it didn't have a full understanding of the prior art in the case. If you look at the prior art and if you look at the disclosures that were made in the Kony patent, he made clear that he was addressing his invention and his method towards auctions in which they were ranked solely by bid amount. And in doing that, he specifically referenced the Davis patent and its commercial embodiment at GOTO.com. And if you look at Davis Figure 7, Your Honor, which is, I think it's at A181 in the appendix, this shows the results of a search that was done in GOTO.com. And so what would happen is in that initial embodiment, they would go in, an advertiser would decide that they wanted to associate their website with searches for zip drives in this example. And so they would go in, they would create an account at GOTO.com, and they would bid an amount in order to try to be listed in the GOTO.com listings. They would bid to associate their website with that particular drive. Let me clarify something for me. In the brief at page 22, you argue Kony's disclosure and bid management system clearly contemplated monitoring position and eschewed monitoring bids. Yes. Specifically, how does one determine and monitor position without determining and monitoring either bids or bid amounts? Your Honor, this is the fundamental point that's related to Davis and upon which Kony relies. Kony envisioned, if you look at Figure 1 of Kony, he envisioned Kony, his system, being an outside system that would reach out to these different search engines across the Internet and perform certain bid management efforts on behalf of his advertisers. Because it was a separate system, Kony only had access to the information he sought to go out and collect from the web servers. Those were completely separate systems. The one thing that he required in his method, and specifically required in a reference to Davis, is that he required they be sorted solely by bid amount. As long as those are sorted by bid amount, he can make a determination as to whether or not a first bid exceeds a second bid only by looking at position. And that's consistent with what he stated in his abstract, his initial disclosure, and every other mention of it in the specification. What about the description in Column 3 of Kony that says, Column 3, Lines 25, 26, talks about as it receives bids from bidder terminals 175, the online bid management system, etc., etc. So there's discussion there about receiving bids. Your Honor, if I may, the relational database system that's specified here in Kony is very narrow as to what information it collects. It anticipates collecting three things from one of its subscribers, and that information is actually entered by Kony's subscribers into Kony's system. It anticipates getting a desired position, a bid amount, and possibly a maximum or a minimum bid. Those are the three bits of information he collects within his system. With respect to the bids here, the online bid management system keeps track of the maximum and minimum bids for each user who enters bids into the bidder terminals. It may be that their advertisers are bidding on multiple bids, multiple keywords. And so they may have, for example, not only a bid for the jump drives or the zip drive response, but they also may be bidding on cars or they may be bidding on automobiles, a number of things within that universe. And so they may have multiple bids because they have multiple keywords and multiple websites, web pages, that you're trying to associate with those. But they're nonetheless receiving bid information, which means bid amounts, correct? I'm sorry, Your Honor, to where you're referring? Again, on column 3, line 25. Your Honor, in his disclosure, what he's talking about here, and bids are made from bidder terminals or computers, as someone skilled in the art under the system of 102. If you look at his overall representation, I apologize, Your Honor. If you look down at column 3, lines 29 to 32, it says the relative priorities for providing the service for bidders for their bids received from the bidder terminals, again talking about bids received, are dependent on whether their bids exceed the value of other bids. Well, that's correct, Your Honor. That's the amount of other bids. If you look at figure 1, Your Honor, again, with references to these different disclosures, the 175s are the bidder terminals, the ones in which the bidders would go out and actually make bids on their particular keywords. And they would enter that into, for example, Konya's system where they're entering in their bid amounts that they require to place on particular keywords. And they would also necessarily be using that to enter information into the different web servers across when they built their accounts. Now, the one thing that Konya does reference is that he also said that there's another possibility. He encompasses in 102 kind of a centralized system where he would perform all this through an interface with his system, but then also a database that would reside actually on the advertiser's system where it would track the advertiser's bids on their keywords. And that's what's disclosed, for example, in 175, Your Honor, where you've got bidder 4. The bid management system that Konya is envisioning is within that particular user's computer. So, for example, rather than going out to a separate system for Konya, he'd have that residing actually on a user's computer. And in that instance, it would utilize, because it's the same person who's doing the bidding, it would be tracking the bidding that that advertiser had been making on his keywords, not the bidders of competing bids by other advertisers for the same keyword. In Appellant's brief at 41, Appellant argues Judge Folsom refused to consider Hoffman's opinion. That is an affidavit. Is it your position that the district court didn't refuse to consider it, the district court considered it and said it was conclusory and therefore non-cognizable. Isn't that right? Well, Your Honor, the magistrate judge failed to adopt it or consider it at all. The magistrate judge's opinion was written as though it didn't exist in the record. When we raised that issue up on appeal and the court did consider it and said it was conclusory, but the reason was, is because, again, the magistrate judge concluded based upon his proposition, the decision from this court, that Konya monitored bids. We are not in dispute, Your Honor, that the value of a bid in the context of Konya's claims is the monetary value of the bid. But the crucial distinction here is that Davis, the search engine, is the one that ranks the bids and places them in order, not Konya. The district judge and the magistrate judge, in rendering their opinions, saw that they looked at the language here from the bid for position court, where it said the value of the bid is the same thing as the monetary value of the bid, and said Konya, therefore, necessarily monitors bids. And the part that they left out of that was the part in Konya's disclosure where he makes clear that he's working with outside search engines where the search engines do the ranking. That's what's disclosed in Davis, is that Davis compares competing bid advertisers. But you're finessing my question. I'm sorry, Your Honor. My question was, wasn't Hoffman's affidavit conclusory? Your Honor, it wasn't in light of the fact that they rejected it only because they saw it as inconsistent with this court's opinion. Because this court concluded, or they said that this court concluded that Konya monitors bids, that Hoffman's declaration was necessary in contravention of that, and therefore it wouldn't be considered. Now, he did use the language that it was conclusory. Conclusory and unsupported, is that right? Well, Your Honor, Hoffman's declaration, respectfully, I don't think is conclusory or unsupported. He walks through all of the disclosures in Konya, including all the disclosures in Figure 2, all the disclosures in Figure 3, and supports his conclusion that Konya only monitors position and uses that to adjust bids through numerous citations in the specification. To the contrary, the assertion that Konya monitors bids is nowhere supported in the detailed description. It's nowhere supported in the specification, and it's not supported by any other language in the patent. So, in returning to the key issues here that were down before this court in bid for position, in an effort to escape summary judgment below, Konya tried to argue that this court should consider the term value, value of a bid, to construe something other, to constitute something other than a monetary amount. And so, that was the issue that was before this court. The court never considered how Konya compared bids or how Konya determined whether or not one bid exceeded the value of a second bid. That simply begged the question. And so, respectfully, the way that Konya monitors and compares bids amounts is by looking only at the position in a very specific type of auction. That's why Konya requires the type of auction that he did. This court recognized that he requires that type of auction. The reason why he does is because he can make decisions on whether or not to increase or decrease bids based solely upon the position of the auction. Mr. Sefton, you have drawings that appear in your principal brief between pages 39 and 40. Yes, Your Honor. Where in the record would I find those drawings? Your Honor, these drawings are an attempt to reconcile the prior art with the disclosures in Konya. And so, if you look at... These don't come from anything in the record. No, Your Honor. We created these for the courts, for explaining all the different exhibits for the court. But I could explain to you how we derived them, if you'd like, Your Honor. Did you say that in your brief? Your Honor, I think that we said that they were schematics that we had developed to demonstrate the way that the system works. I don't believe we ever referred to them as anything actually coming from one of the patents or the prior art, Your Honor. Well, you say on page 39, Konya provides examples of operation, etc. Defendants rely on the first example. But as demonstrated by schematic C, this statement is completely consistent with the Konya bid management system,  Well, Your Honor, there is no reference there to Konya's patent, and any... Even the numbering there suggests that this is something that either came from the record or came from the Konya patent. There's no reference in the descriptive text in your brief to these numbers, 100, 102, 150, making it, again, seem at least to me like this was either part of the patent or part of something in the record. Your Honor, the references there, 2, 101, those are the references to the Konya system. We were trying to show how the elements of the Konya system work in the broader context of working with outside search engines. And so those particular schematics, Your Honor, what they were intended to represent was on the left-hand side is essentially Konya's system, with reference to Konya's search. I know exactly what you were trying to do. It took me a while to figure it out. With the assistance of your adversary, it pointed out the fact that this was something created as part of your argument. And I would suggest to you that if you're going to use a demonstrative as part of your argument, you would be well advised to make that clear, because this comes very close to being something inappropriate. Your Honor, it was certainly never our intent. I thought it was clear from the way that it was presented, and certainly we admitted in our reply that it was not something that was drawn from the record. It was never our intent to mislead the court. It was only intended to illustrate what we were trying to argue. Mr. Sefton, do you want to save some time for rebuttal? Thank you, Your Honor. We will hear from Mr. Pearlson. Mr. Fort, Your Honor, I think that, and as made clear by the presentation here, the main central dispute here is whether Konya monitors bids. And I think that this question is resolved and made clear even in the claim language of Konya itself. In Claim 1 of Konya, it states explicitly, checking for whether a first bid from the first bidder exceeds a second bid from the second bidder. And that's checking bids. It's monitoring bids. It's plain language, and it says it there. And essentially, plaintiff is asking that you ignore that plain language and just assume that that means checking whether a first position from a first bidder exceeds a second position from a second bidder. But there's no reason to read it that way. It makes no sense at all. In fact, the claim uses the word position several times to mean something else, to mean position. So really, this right here resolves it all, and that's exactly what the court in bid for position found. And it addressed the very issue presented here because there it addressed this exact limitation and also the limitation wherein the relative position of priority for providing the service for the first bidder is dependent on whether the value of the first bid exceeds the value of the second bid. And it found, as plaintiff acknowledged, that the value of the bid means the same thing as the bid in the checking element. So it's explicitly that you're checking the bid. It's not that you're checking position. But were that not enough, you can go further down in the claim, and then you can read where it's talking about the increasing or decreasing of the bids. And there you can look and see that if the second to last element is checking for whether the first bid is higher than needed to maintain the selected position of priority that the first bidder wishes to maintain in an auction. Here, once again, we're checking bids. And then if you look in the next element, it says if the first bid is higher than needed to maintain the selected position of priority that the first bidder wishes to maintain in the auction, automatically reducing the first bid to a minimum, which allows the bidder to keep the selected position of priority. In order to do that, you have to know. You have to know what the other bids are. And so that's why it says that you do that. And so this notion that there's no checking or monitoring of bids is directly contrary to Claim 1 of CONIA. And plaintiff also, their reading of this somehow says that CONIA is blindly incrementing and decrementing bids. And that it has no reference at all to the bid amounts. But in their opening brief, they argued that the reason this is is because CONIA couldn't know. Because the information wasn't available. CONIA would not have had a way to actually monitor the bids because they weren't available to CONIA. Well, as we pointed out in our response brief, that's just simply not true. Figure 7 of the Davis reference, which plaintiff directed you to before, shows that the bid amounts for each rank are explicitly shown in the search results from goto.com. So they would have been there. And the plaintiff in its reply actually now acknowledges that. Then they point you to – they say, oh no, but don't look at that. You should look at figure 9. Look at figure 9 because figure 9 doesn't have that information. Well, but figure 9 – there's no reason to think why CONIA would only look at what's in figure 9 of Davis because figure 9 of Davis doesn't have the information you would need to figure out whether you wanted to be in position 4 or 2. It only says what you would need to bid to be in position 1. But we know from the disclosure of CONIA that it allows you to bid for position 4, 5, or 6. And that information wouldn't be available in figure 7. I mean, it wouldn't be available in figure 9, so you'd have to look at what's in figure 7. And that information is clearly available. Plaintiff also has made an argument that we're picking and choosing from different places of the disclosure. I think that if you look at claim 1 and you look at our brief on page 16, it matches right up. You can put the claims right next to each other and see that they're talking about the very same thing. And then briefly on the issue of an expert, simply because plaintiff has provided an expert is not enough to get over summary judgment. The mere putting in of an expert declaration doesn't create an issue of fact, especially when you have a situation like here and like it was in the Iowa case that we cite to, where you have a declaration that basically ignores what's disclosed in the reference. I mean, Hockman doesn't even address the language that I had just presented on the checking of the bids. He doesn't even talk about the claims. Instead, he references figure 2 or figure 3, but he ignores the disclosure of CONIA to come up essentially with his own system that he's created to buttress this non-existent reading of CONIA that it doesn't monitor bids. It's just – it's created – it's essentially his own invention. It has nothing to do with CONIA. So, the district court properly rejected it, not simply because of what happened in the bid proposition, but because it just was completely contrary to the actual disclosure of CONIA. Unless you have any further questions. The way you're talking, you don't seem to agree with the district court. When I read that declaration, it seemed to me to be conclusory. Do you disagree with it? Oh, I think it's absolutely conclusory, Your Honor. Absolutely, I agree. Thank you, Mr. Perlson. I think we have your position. Mr. Sefton has a little rebuttal time. Your Honor, just a few key points I would ask the court to look at in making this determination. We've never contested, for example, Your Honor, that CONIA doesn't have a method in attempts to manage bids. But what it does not do, it does not monitor bids. We're not asking that the court ignore the claims. We're just asking that the court read them consistent with the specification. He states at the beginning of his patent that he's going to develop a method to monitor position in auctions. And everything else in the specification is consistent with that. If you look at Figure 3 where he makes a decision, the initial portion of his decision, where he's going to determine whether or not the system, the outside search engine that he's going to go to to get the information he needs and to make changes on behalf of bidders, does it have an automatic interface or does it have a manual interface? The manual interface disclosed in Davis, the prior art, is not Figure 7. Figure 7 is the search results for somebody who's searching for zip drives. Figure 9 is the interface that the advertisers would use to change their bid. And CONIA made a conscious decision in crafting his claims, not that the other information was not available, but that he was going to manage bids based solely upon the information available on that screen. He could do that because given the fact that it was ranked only by bid amount, he could make a determination on whether or not he needed to increment a bid and attempted to move up to a desired position or to increment and move down based solely upon the current position in the auction. All of that is contained in Figure 9 of the patent. And if you walk through Figure 2 where he talks about what he's going to do to actually make this decision, there's one decision box there, position as desired. Is the position lower than desired? There's no mention of ascertaining or comparing bids or of ranking bids by bid amount or of comparing or determining a differential between those two bids. The only thing he's determining is whether or not the position is lower than desired. And based upon that on the same screen on Figure 9, he can make a determination to change the bid by either increasing it or decreasing it, at which point he has to recheck the position. If he already knew what the other bid was, the bid either below or above, there would be no need to recheck the position because he would be making that desired change. Mr. Sefton, you may not have noticed your red light is on. Oh, I'm sorry. Thank you. We will conclude the argument and take the case under advisement.